UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RONALD BOLLING,

    Petitioner,

vs.

A. P. KANE, Warden,

    Respondent.
                             /

No. C 05-2509 PJH (PR)

**ORDER DENYING HABEAS PETITION**

This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. 2254. The petition is directed to a denial of parole.

The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Petitioner has responded with a traverse. For the reasons set forth below, the petition will be denied.

**BACKGROUND**

A Riverside County jury found petitioner guilty of murder in the second degree. On June 9, 1992, he was sentenced to fifteen years to life in prison. On September 24, 2004, after a hearing before the Board of Prison Terms ("Board"), during which petitioner was represented and was given an opportunity to be heard, the Board found petitioner unsuitable for parole. Ex. B at 45-52.[1] The Board based its decision upon the heinousness of the crime, petitioner's refusal to accept responsibility, his unstable social history, his lack of sufficient self-help programming, his prison disciplinary record, and the opposition of the

---

[1] Citations to "Ex." are to the record attached to respondent's answer.

prosecutor and the victim's family. *Id.*

The Riverside County Superior Court denied petitioner's state habeas petition on grounds petitioner had failed to allege facts sufficient to make out a prima facie case for habeas relief and that the petition lacked merit. Ex. D. The California Court of Appeal and the California Supreme Court denied subsequent petitions without explanation. Ex. E, F.

## DISCUSSION

### I.  Standard of Review

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must

2

be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340. This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended,* 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Id.*

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

**II.   Issues Presented**

Petitioner contends that the Board's finding that he was unsuitable for parole was not supported by the evidence and thus was a violation of his due process rights.

Respondent contends in response that California prisoners have no liberty interest in parole and that if they do, the only due process protections available are a right to be heard and a right to be informed of the basis for the denial – that is, respondent contends there is no due process right to have the result supported by sufficient evidence. He also contends that there was "some evidence" to support the decision.

    **A.   Due Process**

The Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV, § 1.

///

### 1. Liberty Interest

In *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1 (1979), the Supreme Court found that the inmates had a liberty interest in discretionary parole that was protected by the Due Process Clause. The right was created by the "expectancy of release provided in [the Nebraska parole statute.]" That statute provided that the parole board "shall order" release of eligible inmates unless that release would have certain negative impacts. *Id.* at 11–12. The Supreme Court returned to the issue in *Board of Pardons v. Allen*, 482 U.S. 369 (1987). There it held that a similar liberty interest was created even though the parole board had great discretion. *Id.* at 381. For parole decisions, this mode of analysis survived the Supreme Court's later rejection of it for prison disciplinary decisions in *Sandin v. Conner*, 515 U.S. 472 (1995). *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003) (*Sandin* "does not affect the creation of liberty interests in parole under *Greenholtz* and *Allen*.").

While there is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," *Greenholtz*, 442 U.S. at 7, a state's statutory parole scheme, if it uses mandatory language, may create a presumption that parole release will be granted when or unless certain designated findings are made, and thereby give rise to a constitutionally protected liberty interest, *see Board of Pardons v. Allen*, 482 U.S. 369, 376-78 (1987) (Montana parole statute providing that board "shall" release prisoner, subject to certain restrictions, creates due process liberty interest in release on parole); *Greenholtz*, 442 U.S. at 11-12 (Nebraska parole statute providing that board "shall" release prisoner, subject to certain restrictions, creates due process liberty interest in release on parole). In such a case, a prisoner has a liberty interest in parole that cannot be denied without adequate procedural due process protections. *See Allen*, 482 U.S. at 373-81; *Greenholtz*, 442 U.S. at 11-16.

Respondent contends that California law does not create a liberty interest in parole. But California's parole scheme uses mandatory language and is similar to the schemes in *Allen* and *Greenholtz* which the Supreme Court held gave rise to a protected liberty interest

4

in release on parole. In California, the panel or board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." Cal. Penal Code § 3041(b). Under the clearly established framework of *Allen* and *Greenholtz*, "California's parole scheme gives rise to a cognizable liberty interest in release on parole." *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002). The scheme requires that parole release be granted unless the statutorily defined determination (that considerations of public safety forbid it) is made. *Ibid.*; *Biggs v. Terhune*, 334 F.3d 910, 915-16 (9th Cir. 2003) (finding initial refusal to set parole date for prisoner with fifteen-to-life sentence implicated prisoner's liberty interest). In sum, the structure of California's parole scheme -- with its mandatory language and substantive predicates – gives rise to a federally protected liberty interest in parole such that an inmate has a federal right to due process in parole proceedings.

Respondent relies on *In re Dannenberg*, 34 Cal. 4th 1061 (Cal.), *cert. denied*, 126 S. Ct. 92 (2005), as authority for his contention that the California statute does not create a liberty interest in parole. This argument has been rejected by the United States Court of Appeals for the Ninth Circuit. *See Sass v. California Bd. of Prison Terms*, 461 F.3d 1127-28 (2006).

Respondent's argument that California prisoners have no liberty interest in parole is without merit.

**2.    Due-Process Protections**

A parole board's decision violates due process if the decision is not supported by "some evidence in the record" or is "otherwise arbitrary." *Irons v. Carey*, 479 F.3d 658, 662 (9th Cir. 2007) (applying "some evidence" standard used for disciplinary hearings as outlined in *Superintendent v. Hill*, 472 U.S. 445-455 (1985)); *McQuillion*, 306 F.3d at 904. The evidence underlying the Board's decision must also have "some indicia of reliability." *McQuillion*, 306 F.3d at 904; *Biggs*, 334 F.3d at 915. Contrary to respondent's contention,

5

the "some evidence standard" is clearly established federal law in the parole context for purposes of § 2254(d).  *See Sass*, 461 F.3d at 1128-1129.

Ascertaining whether the some evidence standard is met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."  *Hill*, 472 U.S. at 455; *Sass*, 461 F.3d at 1128.  The some evidence standard is minimal, and assures that "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary."  *Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457).

Recent Ninth Circuit cases reflect that a critical issue in parole denial cases is the Board's use of evidence from the commitment offense and prior offenses.  In *Biggs*, the court explained that the some evidence standard may be considered in light of the Board's decisions over time.  *Biggs*, 334 F.3d at 916-917.  The court reasoned that "[t]he Parole Board's decision is one of 'equity' and requires a careful balancing and assessment of the factors considered . . . A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation."  *Id.*  Although the *Biggs* court upheld the initial denial of a parole release date based solely on the nature of the crime and the prisoner's conduct before incarceration, the court cautioned that "[o]ver time, however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of his offense would raise serious questions involving his liberty interest."  *Id.* at 916.

The *Sass* court criticized the decision in *Biggs*: "Under AEDPA it is not our function to speculate about how future parole hearings could proceed."  *Sass*, 461 F.3d at 1129.  *Sass* determined that it is not a due process violation per se if the Board determines parole suitability based solely on the unchanging factors of the commitment offense and prior

offenses. *See id.* (prisoner's commitment offenses in combination with prior offenses amounted to some evidence to support the Board's denial of parole). However, *Sass* does not dispute the argument in *Biggs* that, over time, a commitment offense may be less probative of a prisoner's current threat to the public safety.

In *Irons* the Ninth Circuit emphasized the continuing vitality of *Biggs*, but concluded that relief for Irons was precluded by *Sass*. *See Irons*, 470 F.3d at 664. The Ninth Circuit explained that all of the cases in which it previously held that denying parole based solely on the commitment offense comported with due process were ones in which the prisoner had not yet served the minimum years required by the sentence. *Id.* at 665. Also, noting that the parole board in *Sass* and *Irons* appeared to give little or no weight to evidence of the prisoner's rehabilitation, the Ninth Circuit stressed its hope that "the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from relevant California statutes." *Id.* (citing *Biggs*, 334 F.3d at 917). Even so, the Ninth Circuit has not set a standard as to when a complete reliance on unchanging circumstances would amount to a due process violation.

### 3. Merits

The Board relied for the facts of the offense on the appellate decision, part of which was read into the record. Ex. B at 11-17. The victim was petitioner's wife, with whom he had a "rocky" relationship. *Id.* The autopsy showed she had been hit in the head with a blunt instrument seven times, then strangled; the strangulation was the actual cause of death. Ex. C (probation officer's report) at 6. Petitioner maintains that she fell during an argument and hit her head; he left the room, and when he came back she appeared to be dead. Ex. B at 16-17. He then panicked, wrapped her in a sheet and towel, wrapped a rope around her neck to make it appear she had been strangled by someone else, and disposed of the body. *Id.*

The Board, in denying petitioner parole, cited the heinousness of the crime, petitioner's refusal to accept responsibility, his unstable social history, his lack of sufficient

self-help programming, his prison disciplinary record, and the opposition of the prosecutor and the victim's family. Ex. B at 45-52. All these circumstances "tend to indicate unsuitability for parole" under California regulations. Cal. Code Regs. Title 15, § 2402(a), (c)(1)(A). The Board did not deny parole solely because of the unchanging factor of the nature of petitioner's offense, so the concern expressed in *Biggs*, that after passage of enough time such a factor would cease to be "some evidence," is not triggered here.

Petitioner concedes that he had accumulated seven serious rule violation reports, the last one in 2003, the year before the hearing at issue here. Ex. B at 24. He also had received twelve less-serious "counseling memos." *Id.* He was participating in anger-management and fatherhood courses, but had begun those only three weeks before the hearings. *Id.* at 32. The recent disciplinary violation, the recent nature of his participation in self-help programs, and the nature of the offense, were "some evidence" to support the denial. There was no due process violation, so the state courts' rejection of this claim was not contrary to, or an unreasonable application of, clearly-established United States Supreme Court authority.

## CONCLUSION

The petition for a writ of habeas corpus is **DENIED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: October 11, 2007.

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.05\BOLLING509.RUL.wpd